### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TABITHA ALBERTI,<br><br>        *Plaintiff*,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>        *Defendant*. | Civil Action No. 24-cv-03219-JEB |

### DEFENDANT DISTRICT OF COLUMBIA'S
### MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant District of Columbia respectfully submits this motion to dismiss the Amended

Complaint under Fed. R. Civ. P. 12(b)(6). A memorandum of points and authorities in support

of this motion and a proposed order are attached for the Court's consideration.


Dated: May 9, 2025

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Hailey Guillory*
HAILEY GUILLORY [90022027]
RACHEL B. GALE [90003972]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 442-9794

hailey.guillory@dc.gov

*Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TABITHA ALBERTI, | |
| *Plaintiff*, | |
| v. | Civil Action No. 24-cv-03219-JEB |
| DISTRICT OF COLUMBIA, | |
| *Defendant*. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE AMENDED COMPLAINT

### INTRODUCTION

This lawsuit arises from Plaintiff Tabitha Alberti's employment with the District of Columbia Metropolitan Police Department (MPD).  In her 14-count Amended Complaint, Plaintiff asserts the following claims against Defendant District of Columbia (the District): gender-based hostile work environment/sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title VII) (Count I); sexual harassment under the D.C. Human Rights Act, D.C. Code § 2–1401.01 *et seq*. (DCHRA) (Count II); retaliatory hostile work environment under Title VII (Count III) and the DCHRA (Count IV); gender-based disparate treatment under Title VII (Count V) and the DCHRA (Count VI); retaliation under Title VII (Count VII) and the DCHRA (Count VIII); retaliatory hostile work environment and retaliation under the D.C. Whistleblower Protection Act, D.C. Code 1-615.51 *et seq*. (DCWPA) (Counts IX & X); sexual orientation disparate treatment under the DCHRA (Count XI); sexual orientation-based hostile work environment under the DCHRA (Count XII); "sexual orientation retaliatory hostile work environment" under the DCHRA (Count XIII); and "sexual orientation retaliatory

disparate treatment" under the DCHRA (Count XIV). *See* Am. Compl., ECF No. 12. The Court should dismiss the Amended Complaint in its entirety.

*First*, Plaintiff's Title VII and DCHRA claims premised on discriminatory and retaliatory acts that occurred outside the respective statutes of limitations are time-barred. *Second*, the Court should dismiss Plaintiff's Title VII claims because Plaintiff failed to exhaust her administrative remedies. *Third*, Plaintiff's Title VII and DCHRA retaliation claims fail because Plaintiff cannot show a causal connection between any protected activity and a materially adverse employment action. *Fourth*, Plaintiff alleges no facts sufficient to show that she endured severe or pervasive harassment, and thus she fails to state a plausible hostile work environment claim. *Fifth*, Plaintiff's gender and sexual orientation discrimination claims, to the extent that they are based on discrete adverse employment actions, fail because she does not allege that she suffered an adverse employment action because of her gender or sexual orientation. *Sixth*, Plaintiff's DCWPA claims should be dismissed because she cannot seek relief for retaliation that was not conducted by a supervisor, there is no causal connection between any purported protected disclosures and prohibited personnel action, and allegations of retaliation occurring more than a year before Plaintiff filed this lawsuit are time-barred. *Seventh*, Plaintiff's sexual harassment claims are untimely and unexhausted. *Lastly*, several of Plaintiff's causes of actions in the Amended Complaint are duplicative of other counts and thus should be dismissed. Accordingly, as explained further below, the Court should dismiss the Amended Complaint with prejudice.

**FACTS**

Plaintiff is currently employed with MPD as a police officer and has been since 2006. Am. Compl. ¶ 1. She alleges that she is "perceived to be a member of the LGBTQ community"

4

within MPD. *Id.* Plaintiff alleges that, during her time at the police academy from 2006 through February 2007, she experienced harassment, discrimination, and retaliation. *See id.* ¶¶ 35–66. Specifically, she alleges that, in 2006, she was subjected to sexual harassment from Recruit Matthew Burke and that she reported the harassment to Sergeant Ashley Rosenthal and Class Officer Gary Nelson. *Id.* ¶ 35. Plaintiff alleges that, after making this report, Recruit Burke continued to harass her and that she reported his behavior to Class Officer Nelson. *Id.* ¶¶ 37–43. Class Officer Nelson referred Plaintiff to Sergeant Rosenthal, and the two met in late October 2006. *Id.* ¶¶ 43–44. Sergeant Rosenthal allegedly dismissed Plaintiff's concerns. *See id. Id.* ¶¶ 44–45. Because Plaintiff reported experiencing sexual harassment, unnamed police academy instructors "labeled Plaintiff a 'problem child' and initiated a campaign of disparate treatment and retaliation against [her] that carries on until the present." *Id.* ¶¶ 46–47. For the remainder of her time at the police academy, from which she graduated in February 2007, Plaintiff alleges that she was subjected to a hostile work environment. *Id.* ¶¶ 64–66.

After graduating from the police academy, Plaintiff was assigned to MPD's Sixth District. *Id.* ¶ 70. Plaintiff alleges that her assignment to the Sixth District in 2007 was based in sexism. *See id.* ¶¶ 71–73. At some point, Officer Burke, from whom Plaintiff had allegedly been subjected to sexual harassment at the police academy, and Officer Joseph Campell were also assigned to the Sixth District. *Id.* ¶¶ 76–77. Plaintiff alleges, without explaining how, that Officers Burke and Campell's assignment to the Sixth District caused Plaintiff to be subjected to a hostile work environment, and that "the hostile work environment from the academy did not ever truly abate, and followed her to [the Sixth District]," *id.* ¶¶ 78–79. Plaintiff alleges that, while in the VNU between 2008 and 2013, Plaintiff witnessed EEO violations and was sexually harassed by Officer Campell. *See id.* ¶¶ 80–82.

Plaintiff alleges that she became "a target" in the VNU because she commented on how officers treated Officer Joseph Tridico. *Id.* ¶ 84. In March 2011, Officer Tridico filed an EEO complaint alleging religious discrimination, and he listed Plaintiff as a witness. *Id.*¶ 83. Plaintiff alleges that, during this time, she was "regularly disrespected, treated inhumanely, and was often questioned regarding her sexuality," *id.* ¶ 86, but did not file a formal complaint due to her negative experience filing a report during her time at the academy, *id.* ¶ 85.

In 2014, Officer Tridico's claim went to trial, and Plaintiff testified on his behalf. *Id.* ¶ 88. Plaintiff testified that Officer Lee Shefman bullied and discriminated against Officer Tridico. *Id.* ¶ 89. Plaintiff alleges that, "[i]mmediately" after testifying, Plaintiff was removed from the Sixth District and transferred to the Second District despite not having any performance issues at the Sixth District prior to testifying. *Id.* ¶¶ 90–91. Plaintiff further alleges that, once it became known that she had testified at Officer Tridico's trial, "she was repeatedly retaliated against for frivolous disciplinary write-ups by the Sergeants in her unit." *Id.* ¶ 92.

Eight years later, in February 2022, Officer Shefman was transferred to Plaintiff's unit, promoted to sergeant, and began to retaliate against Plaintiff and "poison [her] colleagues against her" almost immediately after his arrival. *Id.* ¶¶ 93–94. Plaintiff alleges that within two months of Sergeant Shefman's arrival at the Second District, he disciplined Plaintiff for what he later learned to be an unsubstantiated reason and, on some unspecified date, Plaintiff heard Shefman tell other officers something to the effect that Plaintiff "has always been a problem." *Id.* ¶¶ 95–96. Plaintiff alleges that, at the Second District, she has been subjected to "harassment, insults and humiliations, attacks on her character and reliability, . . . and constant comments about her perceived sexuality." *Id.* ¶ 98. Plaintiff does not identify who took these actions or when they were taken. *See id.*

6

On September 20, 2022, Plaintiff sought a meeting with Commander Duncan Bedlion, the Second District's unit commander. *Id.* ¶ 99. During this meeting, Plaintiff requested a transfer to a different unit within the Second District due to "experience targeted retaliation and harassment from other officers who were aware of her history." *Id.* ¶ 100. The next day after the meeting, Sergeant Nicholas Kunez wrote Plaintiff up for a uniform violation. *Id.* ¶ 101. Although she had a medical note to justify the uniform violation, she did not have the documentation with her at the time she was written up. *Id.* ¶¶ 101-102. Plaintiff alleges that "[m]ale officers often had similar medical waivers for shaving but were never written up or required to carry medical notes with them." *Id.* ¶ 103. Plaintiff was suspended for the uniform infraction, but the decision was later reversed. *Id.* ¶ 104. Regardless, Plaintiff alleges that she was "seriously affected by the disparate and unfair disciplinary action, which negatively impacted her work assignments and blocked her ability to earn overtime pay, and to be considered for promotion. *Id.* ¶ 106.

At some unknown time, Officer Campell, with whom Plaintiff had served in the Sixth District, was transferred to the Second District. *Id.* ¶ 108. Plaintiff alleges that, upon his transfer to the Second District, Officer Campbell "picked up where he left off, pursuing a sexual relationship with Plaintiff, and making repeated unwanted advances on her" and subjecting her to homophobic comments when Plaintiff rejected his advances. *Id.* ¶¶ 108–113. Plaintiff complained to her immediate supervisor, Sergeant Robinson, at least five times in 2022 regarding Officer Campbell's behavior, but Plaintiff alleges that Sergeant Robinson did not take any action in response. *Id.* ¶ 114.

In early 2023, Plaintiff alleges that she met with Chief of Police Pamela Smith to complain about the sexual harassment she was being subjected to, but Plaintiff alleges that Chief

Smith did not take any action in response. *Id.* ¶ 119, 124. Around July 20, 2023, Plaintiff filed a formal complaint with the MPD EEO that Officer Campbell was sexually harassing her and that Sergeant Robinson was not taking appropriate action in response. *Id.* ¶ 126. Plaintiff alleges that her "complaint related to her years of experience with Officer Campbell . . . which continued from their time working together at [the Sixth District] to [the Second District]." *Id.* ¶ 127. The Complaint was investigated and sustained. *Id.* ¶ 131. Plaintiff alleges that, as a result of filing her July 2023 complaint, she was "retaliated against by being disciplined for failing to 'follow departmental guidelines.'" *Id.* ¶ 132. Plaintiff does not indicate who disciplined her or when or specify what the alleged "discipline" was..

On January 14, 2024, nearly six months after Plaintiff filed her complaint, Sergeant Robinson issued Plaintiff a counseling letter, which Plaintiff alleges was unwarranted, for not "coming into service in a timely fashion." *Id.* ¶ 133. Plaintiff alleges that this counseling letter was retaliatory because no one else was disciplined for the same conduct and this conduct is very common. *Id.* ¶ 135. Plaintiff's union representative reached out to Sergeant Robinson, and, subsequently, he wrote up two male officers for the same offense. *Id.* ¶ 136. And Plaintiff alleges that Sergeant Robinson "manufactured a basis" to write up these two male officers for the reason he wrote up Plaintiff. *Id.* ¶ 137. Plaintiff contends that this shows Sergeant Robinson "targeted Plaintiff for disparate disciplinary treatment and wrote up the other officers to cover his tracks." *Id.* ¶ 139.

Plaintiff further alleges, without providing dates or identifying the names or titles of relevant actors, that, "[o]n several occasions," she was subjected to derogatory comments and "deliberately given more demanding assignments [such as] combative psychosis prison transfer details." *Id.* ¶¶ 140. Plaintiff alleges that these assignments are usually distributed evenly but

that she was given them repeatedly "as a form of retaliation." *Id.* ¶ 141. Plaintiff further alleges that her "supervisors would not honor [her] seniority" when issuing assignments and made her take assignments usually given to less senior officers, "frequently left her as the sole officer responsible for patrolling the busiest areas, while other officers were given less strenuous tasks," and that she "was solely assigned tasks reserved for female officers when there were other female officers on duty." *Id.* ¶¶ 142–45.

In February 2024, Plaintiff "raised concerns about [Officer] Campbell's failure to respond to his calls and assignments in a timely manner[,]" which is what Plaintiff alleges she was disciplined for in January 2024. *Id.* ¶ 146. Plaintiff's supervisors, Lieutenant Merzig and Sergeant James Koenig, "disregarded her complaints" and accused Plaintiff of "surveilling" Officer Campbell. *Id.* ¶ 147. Plaintiff also alleges that, on April 11, 2024, she received a counseling letter from Sergeant Benton "for using the designated report writing room's computer to file a report" because the computer in her vehicle was not working. *Id.* ¶ 148. Sergeant Schefman also issued Plaintiff a counseling letter that day "falsely claiming that she refused to come into service with her midnight partner"; Plaintiff alleges that this was "only retaliation for her complaint[] but also related to Plaintiff's testimony against Sgt. Schefman in the *Tridico* case."[1] *Id.* ¶¶ 153–54. In July 2024, Plaintiff asked to be removed from working with Officer Campbell and Sergeant Schefman due to alleged safety concerns, but the request was denied. *Id.* ¶ 155. Plaintiff alleges that throughout 2024, she received "multiple counseling letters and reprimands" issued in retaliation for her July 2023 EEO complaint and testimony given in 2014. *Id.* ¶ 157.

---

[1]    Plaintiff does not specify whether she is referring to the complaint about Officer Campbell's alleged neglect of duty or her complaint with IAD. *See* Am. Compl. ¶ 154. But, in paragraph 157 of the Amended Complaint, Plaintiff explicitly limits her retaliation allegations to her EEO complaint (i.e. the IAD complaint). *See id.* ¶ 157.

Plaintiff further alleges that she has been subjected to "sustained harassment" and that the aforementioned retaliatory actions "created a hostile work environment that impeded her ability to execute her duties, hampered her relationships with her colleagues, and stymied her job development and promotion opportunities." *Id.* ¶ 162.  Plaintiff contends that the hostile work environment was exacerbated by her being overlooked for "various positions and promotions within . . . MPD" from 2016 to 2024.  *Id.* ¶¶ 163–164.  Plaintiff also alleges that she was not promoted to sergeant despite passing the exam in 2020, 2021, and 2022, and that, although she was "next on the list to be promoted to sergeant," MPD expunged the list months before it was set to expire and, instead, looked "to a previous year's list for promotion."  *Id.* ¶¶ 165–168.

Plaintiff also alleged that, during an unspecified time period, as a result of harassment she experienced, she was "hampered in her ability to execute her duties . . . which included not being given vital information [from] her colleagues and Sergeants."  *Id.* ¶ 171.  Also without specifying a time period or specific actors, Plaintiff alleges that she "was subjected to constant, near daily insults about her appearance, her sexual habits and practices, and her gender expression."  *Id.* ¶ 174.  She asserts that she "has made multiple attempts to seek redress and protection from her supervisors and . . . MPD, but her complaints have been consistently dismissed or ignored."  *Id.* ¶ 178.

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a "two-pronged approach" for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  556 U.S. at 679.

While a court generally must consider a plaintiff's factual allegations as true, it must first

"identify[] pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth.  While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations."  *Id.*  Thus, the basic pleading standards "demand[]

more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (citing

*Twombly*, 550 U.S. at 555).  If the court determines that the plaintiff has asserted "well-pleaded

factual allegations," it "should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief."  *Id.* at 679.  But the court need not draw inferences in favor

of the non-movant "if such inferences are unsupported by the facts set out in the complaint."

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Motions to dismiss for failure to exhaust administrative remedies are properly addressed

as motions to dismiss for failure to state a claim.  *See Scott v. Dist. Hosp. Partners, L.P.*, 60 F.

Supp. 3d 156, 161 (D.D.C. 2014), *aff'd*, 715 F. App'x 6 (D.C. Cir. 2018).  While the Court

cannot consider materials outside the pleadings when deciding a motion to dismiss without

converting it to a motion for summary judgment, Fed. R. Civ. P. 12(d), it can consider

documents incorporated in the complaint in deciding a Rule 12(b)(6) motion without converting

the motion into one for summary judgment, including documents referenced or cited to in a

complaint, such as EEOC charges.  *Id.* (deeming plaintiff's EEOC charges as incorporated into

her complaint and considering them without converting motion to dismiss into one for summary

judgment); *see also Cong. v. District of Columbia*, 277 F. Supp. 3d 82, 88 n.2 (D.D.C. 2017)

("The Court can permissibly rely on Congress's EEOC charge without converting this to a

motion for summary judgment because the document is one that Congress refers to in her

complaint and that her claims necessarily relies on." (internal citation omitted)).  A court may

also take judicial notice of public records from other proceedings, including EEOC proceedings. *See Abhe & Svoboda, Inc.*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *see also Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 366 n.2 (D.D.C. 2018) (noting that "courts often take judicial notice of EEOC charges and EEOC decisions" in deciding motions to dismiss and collecting such cases). The Court may thus consider Plaintiff's EEOC charge without converting this motion to dismiss to a motion for summary judgment.

## ARGUMENT

I.    **Plaintiff's Title VII and DCHRA Claims Premised on Discrete Acts Outside the Statutory Period Are Time-Barred (Counts I–VIII, XI–XIII).**

Plaintiff's Title VII and DCHRA claims premised on alleged discriminatory and retaliatory acts that occurred outside the respective statute of limitations periods are time-barred. For claims brought under Title VII, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). The DCHRA has a one-year statute of limitations. D.C. Code § 2–1403.16. The statute of limitations under the DCHRA is tolled while the EEOC charge is pending, *see Hatter v WMATA*, 105 F. Supp. 3d 7, 10 (D.D.C. 2015) ("A charge filed with the EEOC is automatically cross-filed with the D.C. Office of Human Rights, [so] filing a charge with the EEOC suffices to toll the one-year statute of limitations for DCHRA claims." (citation and internal quotation marks omitted)), and resumes once the EEOC charge is resolved, *see* D.C. Code § 2–1403.16.

Here, Plaintiff's Title VII and DCHRA claims based on allegations outside the applicable statutory periods are time-barred. Because Plaintiff filed her EEOC charge on December 21, 2023, any adverse actions that occurred before February 24, 2023—300 days before she filed her

12

EEOC charge—are not actionable under Title VII. *See Morgan*, 536 U.S. at 110. And because Plaintiff filed this lawsuit on November 14, 2024, adverse employment actions that occurred before November 14, 2023, are not actionable under the DCHRA. Thus, Plaintiff's Title VII and DCHRA discrimination and retaliation claims based on older discrete acts—before February 24, 2023, for Title VII, and before November 14, 2023, for the DCHRA—are time-barred.

## II.    **Plaintiff's Title VII Claims Are Unexhausted (Counts III and VII).**

Except for Plaintiff's allegations of retaliation by Schefman, Plaintiff did not include in her December 21, 2023 EEOC charge any allegation she now makes in support of her Title VII claims in this lawsuit. Because Plaintiff's lawsuit must be limited in scope to the allegations she included her charge, Plaintiff failed to exhaust her administrative remedies. And her allegations about Schefman's purported retaliation were not timely exhausted. Therefore, the Court should dismiss Plaintiff's Title VII claims entirely.

"Title VII requires that a person complaining of a violation file an administrative charge with the EEOC and allow the agency time to act on the charge." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). The lawsuit filed after a plaintiff is given notice of her right to sue "is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994)). "Specifically, a plaintiff's claims 'must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination.'" *Kruger v. Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 82 (D.D.C. 2016) (quoting *Park*, 71 F.3d at 907).

Here, Plaintiff's December 21, 2023 EEOC charge does not include the myriad allegations of discrimination, retaliation, and hostile work environment she now brings in this lawsuit. Instead, for the most part, the charge only makes broad, generalized allegations of

misconduct that do not identify actors, dates, and specific adverse actions or acts of harassment. *See* Ex. 1. These bald and imprecise allegations do not satisfy the exhaustion requirement. "The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision. . . . [T]he requirement of some specificity in a charge is not a mere technicality. A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park*, 71 F.3d at 907 (cleaned up). Accordingly, Plaintiff failed to exhaust her administrative remedies under Title VII. *See Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 (D.D.C. 2009) ("A plaintiff fails to exhaust administrative remedies when the complaint she files in federal court includes a claim that was not raised in the administrative complaint.").

What is more, her allegations of retaliation concerning Schefman are unexhausted. Prior to bringing this lawsuit, Plaintiff filed an EEOC charge on December 21, 2023. *See* Ex. 1. Yet in the Complaint, Plaintiff alleges retaliation by Schefman starting in 2024. *See* Am. Compl. ¶¶ 153–54. These claims were clearly not included in the charge that pre-dated the alleged retaliation and thus are unexhausted. Because Plaintiff alleges that she suffered purported adverse actions in 2024, she was required to file an EEOC charge specifying the alleged retaliatory acts that occurred in 2024. *See Rashad v. WMATA*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) ("Most judges in this district have held that plaintiffs alleging discrete acts of discrimination or retaliation 'must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.'" (quoting *Coleman–Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004))); *Holmes v. Austin*, No. 23-CV-2415 (LLA), 2024 WL 4345829, at *5 (D.D.C. Sept. 30, 2024) ("This court adopts the majority rule because it is more consistent with *Morgan*'s command that discrete claims of discrimination

be treated individually.").  Additionally, Plaintiff did not file a charge within 300 days of

Schefman's alleged retaliatory acts occurring in 2022, so those claims are unexhausted as well.

*See* Am. Compl. ¶¶ 93–97; Ex. 1.

Because Plaintiff's Title VII claims are unexhausted, the Court should dismiss them.

### III.   <u>Plaintiff's Title VII and DCHRA Retaliation Claims Fail (Counts VII, VIII, and XIV).</u>

Plaintiff's Title VII and DCHRA retaliation claims fail because Plaintiff cannot show a

causal connection between any protected activity and a materially adverse employment action.

"To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially

adverse action (ii) because he or she had brought or threatened to bring a discrimination claim."[2]

*Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e–3(a)).

"For purposes of meeting the requirement of a *prima facie* case, '[t]he causal connection . . . may

be established by showing that the employer had knowledge of the employee's protected activity,

and that the adverse personnel action took place shortly after that activity.'"  *McFarland v.*

*George Washington Univ.*, 935 A.2d 337, 356 (D.C. 2007) (quoting *Arthur Young & Co. v.*

*Sutherland,* 631 A.2d 354, 368 (D.C. 1993)); *Francis v. District of Columbia*, 731 F. Supp. 2d

56, 77 (D.D.C. 2010) ("[W]here a causal connection is based on the employer's knowledge of

the plaintiff's protected activity, temporal proximity is also required.").

"For purposes of establishing a prima facie case of retaliation, temporal proximity can

indeed support an inference of causation, but only where the two events are very close in time."

*Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012); *see Clark Cty. Sch. Dist. v.*

---

[2]    "Although an employment discrimination plaintiff need not plead each element of a prima facie case to survive a motion to dismiss, he must nevertheless plead sufficient facts to show a plausible entitlement to relief."  *Kruger v. Cogent Commc'ns, Inc*. 174 F. Supp. 3d 75, 82 (D.D.C. 2016) (citation and internal quotation marks omitted).

*Breeden*, 532 U.S. 268, 273 (2001) (per curiam) ("[C]ases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.") (internal quotation marks omitted). Although neither the Supreme Court nor the D.C. Circuit "has established a bright-line three-month rule" of temporal proximity, *id.*, courts have found that "[w]hen relying on temporal proximity alone to demonstrate causation, . . . three months is perceived as approaching the outer limit." *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015); *see also McFarland*, 935 A.2d at 356.

Here, there is no temporal proximity between Plaintiff's protected activity and any materially adverse employment action, and thus Plaintiff's retaliation claims fail. Plaintiff alleges that she engaged in protected activity in July 2023 when she made her EEO complaint to IAD. Am. Compl. ¶ 126.[3] But Plaintiff does not allege that any adverse action was taken against her in retaliation for bringing the complaint until January 2024 at the earliest—six months after she brought her EEO complaint. Am. Compl. ¶¶ 132-35.[4] This is insufficient to show temporal proximity. *See Farris v. Clinton*, 602 F. Supp. 2d 74, 92 (D.D.C. 2009) (six months is too long to establish temporal proximity); *Cooke v. Rosenker*, 601 F. Supp. 2d 64, 89–90 (D.D.C. 2009 ("[A] gap of six months between Cooke's reassignment and her last protected activity is

---

[3]    Plaintiff also alleges that she experienced retaliation for testifying at a jury trial in support of Officer Tridico's religious discrimination claim in 2014. Am. Compl. ¶¶ 88-92. But any adverse actions Plaintiff alleges were taken in retaliation for testifying are either time-barred, *see* Am. Compl. ¶¶ 90, 92; Section I, *supra*, or not actionable because Plaintiff cannot establish temporal proximity, *see* Am. Compl. ¶¶ 90, 92, 153–54 (alleging retaliatory acts in 2022 and 2024 based on Plaintiff's testimony in support of Officer Tridico in 2014).

[4]    Plaintiff also alleges that she was disciplined for "failing to 'follow departmental guidelines'" as a result of bringing her complaint, but she does not state when the alleged discipline occurred. Am. Compl. ¶ 132.

insufficient to demonstrate the close temporal proximity necessary to infer a retaliatory motivation."). Because there is no temporal proximity between Plaintiff's protected activity and any materially adverse action, Plaintiff's Title VII and DCHRA retaliation claims fail. Therefore, the Court should dismiss Counts II and IV of the Complaint.

What is more, Plaintiff's allegations that she received letters of counseling and reprimands after making her July 2023 complaint to IAD do not support materially adverse action. "Courts in this jurisdiction have generally held that counseling memoranda are not adverse actions[]" and, likewise, "have generally held that reprimands are not adverse actions, even in the retaliation context." *Kline v. Weichert*, No. 16-CV-262 (RCL), 2020 WL 2615528, at *9 (D.D.C. May 23, 2020), *aff'd sub nom. Kline v. Ahuja*, No. 20-5220, 2021 WL 5537701 (D.C. Cir. Nov. 23, 2021); *see Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002) ("This Court has held that formal criticisms or reprimands, without additional disciplinary action such as a change in grade, salary, or other benefits, do not constitute adverse employment actions."); *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 57 (D.D.C. 2022) ("In the retaliation context, letters of counseling and performance reviews typically do not constitute materially adverse actions absent some further 'tangible job consequences,' such as 'financial harms' or impacts related to an employee's 'position, grade level, salary, or promotion opportunities.'" (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008))). Here, Plaintiff alleges that she received counseling letters and reprimands in January 2024, April 2024, and throughout 2024. *See* Am. Compl. ¶¶ 133, 148, 153–54, 157. But she offers no allegations that these counseling letters and reprimands had any effect on the terms, conditions, or privileges of her employment. *See id.* Accordingly, these acts do not support a retaliation claim.

IV.    **Plaintiff Fails to State a Hostile Work Environment Claim Under Title VII and the DCHRA (Counts I, II, III, IV, XII, and XIII).**

Plaintiff fails to state a plausible hostile work environment claim under either Title VII or the DCHRA, and therefore, the Court should dismiss Counts I, III, IV, XII and XIII of the Complaint.

To state a hostile work environment claim under Title VII and the DCHRA, Plaintiff must allege facts showing that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult" and that this conduct was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted); *accord Sonmez v. WP Co. LLC*, 330 A.3d 285, 324–26 (D.C. 2025) (applying same standard to DCHRA hostile work environment claim).  In determining whether a work environment is sufficiently hostile to be actionable, the Court should consider several factors: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or merely offensive; and (4) whether the conduct reasonably interferes with the employee's performance.  *Morgan*, 536 U.S. at 116; *Faragher v. Boca Raton*, 524 U.S. 775, 787–88 (1998); *see also Baird v. Gotbaum*, 792 F.3d 166, 169 (D.C. Cir. 2015).  "This standard is a demanding one," because the law "is not intended to function as a 'general civility code' that regulates the 'ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Burrell v. Shepard*, 321 F. Supp. 3d 1, 12 (D.D.C. 2018) (quoting *Faragher*, 524 U.S. at 788); *see also Faragher*, 524 U.S. at 788 (explaining that "the conduct must be extreme to amount to a change in the terms and conditions of employment").

Here, Plaintiff's allegations fall far short of stating a plausible hostile work environment

claim under both Title VII and the DCHRA.  Plaintiff alleges that she was subjected to increased

scrutiny, harsh criticisms, and unspecified "bullying" and "harassment" over a period

of several, noncontinuous years.  But these alleged acts constitute nothing more than "the

ordinary tribulations of the workplace."  *Burrell*, 321 F. Supp. 3d at 12.  "[C]ourts have generally

rejected hostile work environment claims that are based on work-related actions by supervisors."

*Brooks v. Grundmann*, 851 F. Supp. 2d 1, 7 (D.D.C. 2012) (citation and quotation marks

omitted), *aff'd*, 748 F.3d 1273 (D.C. Cir. 2014); *see also Bell v. Gonzales*, 398 F. Supp. 2d 78,

92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily

workplace decisions are not sufficient to establish a hostile work environment.").  Plaintiff

alleges nothing more here.  Thus, Plaintiff does not allege sufficient severity or pervasiveness to

support a hostile work environment claim.

  Nor can Plaintiff's allegations of disparate discriminatory and retaliatory acts collectively

sustain a hostile work environment claim under either statute.  "A hostile work environment

claim requires more than a series of allegedly discriminatory acts."  *Green v. Haaland*, No. 21-

CV-329 (RDM), 2023 WL 1795576, at *6 (D.D.C. Feb. 7, 2023).  For this reason, "as a general

matter, courts in this Circuit frown on plaintiffs who attempt to bootstrap their alleged discrete

acts of [discrimination and retaliation] into a broader hostile work environment claim" and are

"reluctant to transform mere reference to alleged disparate acts of discrimination [and retaliation]

against plaintiff into a hostile work environment claim."  *Dudley v. Wash. Metro. Area Trans.*

*Auth.*, 924 F. Supp. 2d 141, 164 (D.D.C. 2013).  Instead, "acts giving rise to a hostile work

environment claim must collectively meet the independent requirements of that claim (i.e., be

sufficiently severe or pervasive), and must be adequately connected to each other (i.e., all acts

which constitute the claim are part of the same unlawful employment practice, as opposed to

being an array of unrelated discriminatory or retaliatory acts." *Baird*, 662 F.3d at 1252 (internal

citations and quotation marks omitted). Plaintiff's allegations fall well short of this standard—

she alleges nothing more than an array of unrelated, scattershot comments, criticisms, and

workplace decisions over the course of her career. *See Laughlin v. Holder*, 923 F. Supp. 2d 204,

221 (D.D.C. 2013) (dismissing hostile work environment claim because non-promotions,

manipulating performance evaluations, denying bonuses, and repeatedly pressuring plaintiff to

retire did not rise to level of an actionable hostile work environment).

Accordingly, Plaintiff fails to state a retaliatory hostile work environment claim under

Title VII and the DCHRA. The Court should therefore dismiss Counts I, II, III, IV, XII and XIII

of the Amended Complaint.

**V.**    **To the Extent that Plaintiff Brings Title VII and DCHRA Claims Based on Gender and Sexual Orientation Discrimination, Those Claims Fail (Counts V, VI, and XI).**

To the extent that Plaintiff brings gender and sexual orientation discrimination claims

(separate from her hostile work environment claims based on gender and sexual orientation),

such claims fail because she does not plausibly allege that she suffered an adverse employment

action because of her gender or sexual orientation.

"The legal standard for discrimination under the DCHRA is substantively the same as

under Title VII." *Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 73 (D.D.C. 2002). A plaintiff

bringing a discrimination claim under Title VII and the DCHRA must allege that: "(1) she is a

member of a protected class (2) she suffered an adverse employment action and (3) the

unfavorable action gives rise to an inference of discrimination, that is, an unfair inference that

her employer took the action because of her membership in a protected class." *Doe 1 v. Geo.*

*Wash. Univ.*, 369 F. Supp. 3d 49, 84 (D.D.C. 2019) (quoting *Miles v. Univ. of the Dist. of*

*Columbia*, No. 12-CV-378 (RBW), 2013 WL 5817657, at *13 (D.D.C. Oct. 30, 2013)); *see Little*

*v. D.C. Water & Sewer Auth.*, 91 A. 3d 1020, 1027 (D.C. 2014).  An adverse employment action

is defined as an action that causes "harm respecting an identifiable term or condition of

employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024).

Here, Plaintiff's claim falters on the second and third prongs.  "Courts in this district have

allowed a plaintiff's claim of employment discrimination to survive a [Rule] 12(b)(6) motion as

long as the complaint supports an inference of discrimination." *Badwal v. Bd. of Trustees of*

*Univ. of the Dist. of Columbia*, 139 F. Supp. 3d 295, 311 (D.D.C. 2015).  But Plaintiff's

complaint does not meet this low bar.  The counts in the Amended Complaint asserting gender

and sexual orientation discrimination do not point to any discrete adverse employment action

that Plaintiff contends occurred as a result of gender or sexual orientation discrimination.  *See*

Am. Compl. ¶¶ 219–24, 278–85.  Rather, Plaintiff alleges that she was subjected to harassment

based on her gender and sexual orientation.  *See id.* ¶¶ 221–24, 280–85.  But such allegations go

to a hostile work environment claim, not a discrimination claim based on discrete adverse

employment actions.[5]  And Plaintiff offers no other timely allegations that support a claim that

she suffered adverse emploment actions due to gender or sexual orientation discrimination.  *See*

Am. Compl.; *Badwal v.* 139 F. Supp. 3d at 311.[6]  Accordingly, the Court should dismiss Counts

V, VI, and XI of the Amended Complaint.

**VI.    Plaintiff's DCWPA Claims Fail (Counts IX and X).**

Plaintiff's DCWPA claims should be dismissed because Plaintiff does not sufficiently

allege a causal connection between any purported disclosures and a prohibited personnel action,

---

[5]      And these allegations of gender-based and sexual orientation-based harassment are either
untimely or unexhausted.  *See* Section VII, *infra*.
[6]      Additionally, even under the more lenient standard articulated in *Muldrow*, the
counseling letters and reprimands Plaintiff was issued do not constitute adverse employment
actions.

and some of the allegations are time-barred.

The DCWPA makes it unlawful for "a supervisor [to] take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Code § 1-615.53(a). To state a DCWPA claim, Plaintiff must allege that (1) she made a protected disclosure, (2) a supervisor retaliated or took or threatened to take a prohibited personnel action against her, and (3) her protected disclosure was a contributing factor to the retaliation or prohibited personnel action. *Freeman v. District of Columbia*, 60 A.3d 1131, 1141 (D.C. 2012). The DCWPA defines a contributing factor as "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." D.C. Code § 1-615.52(a)(2). The DCWPA "does not immunize employees from any and all employment actions; it only protects against those adverse employment actions for which the employee's disclosure or attempted disclosure was 'essentially a but for' cause." *Coleman v. District of Columbia*, 794 F.3d 49, 60 (D.C. Cir. 2015) (quoting *Johnson v. District of Columbia*, 935 A.2d 1113, 1119 (D.C. 2007)). Temporal proximity may support causation where the alleged retaliation occurred within four months after the protected disclosure was made. *Johnson*, 935 A.2d at 1120 ("[A] stretch of four months realistically cannot constitute temporal proximity in the ordinary sense of that phrase."). Moreover, to be actionable under DCWPA, the alleged prohibited personnel action must have been taken by a supervisor. *See* D.C. Code § 1–615.53(a) ("A *supervisor* shall not take, or threaten to take, a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure . . . ." (emphasis added)).

According to Plaintiff, after she made protected disclosures, her coworkers and supervisors made her work environment hostile by harassing her, issuing her multiple counseling letters and reprimands, denying her promotions, assigning her demanding patrol duties without support, subjecting her to excessive scrutiny by supervisors, and alienating her from her peers by highlighting her whistleblower status.  *See* Am. Compl. ¶ 268.  To start, because only the conduct of supervisors is actionable under the DCWPA, *see* D.C. Code § 1–615.53(a), Plaintiff cannot sustain her claim under the DCWPA based on her coworkers' actions.  Although a retaliatory hostile work environment is actionable under the DCWPA, Plaintiff must demonstrate that her *supervisors*, after learning of her protected disclosures, created a hostile work environment in retaliation.  *See McCall v. D.C. Hous. Auth.*, 126 A.3d 701, 706 (D.C. 2015).

Furthermore, Plaintiff's DCWPA claims falter entirely at the third element: because there is no temporal proximity between her disclosures and any alleged prohibited personnel action, Plaintiff cannot establish causality.  Even if Plaintiff's July 2023 EEO complaint is a protected disclosure, *see* Am. Compl. ¶ 252, she did not experience any alleged retaliation until six months later, when she received a counseling letter in January 2024, *see id.* ¶ 133.  This is too long to establish temporal proximity under the DCWPA.  *See Johnson*, 935 A.2d at 1120.  And Plaintiff's allegations of engaging in protected activity in 2006 and 2014 are far too remote in time to support her DCWPA claims.  *See* Am. Compl. ¶¶ 247, 251.  Accordingly, because Plaintiff cannot establish a causal link between any alleged protected disclosure and alleged retaliation, the Court should dismiss Counts IX and X of the Amended Complaint.  Additionally, to the extent that Plaintiff seeks relief for alleged retaliation that occurred more than one year before she filed this action, those claims are time-barred under the DCWPA's one-year statute of limitations.  *See* D.C. Code § 1–615.54(a)(2).

**VII.    Plaintiff's Hostile Work Environment Claims Based on Her Gender and Sexual Orientation Are Untimely and Unexhausted (Counts I, II, XI, and XII).**

Plaintiff's hostile work environment claims based on sexual harassment are untimely and unexhausted under Title VII and untimely under the DCHRA.  Under both statutes, "if 'an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of determining liability.'"  *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 890 (D.C. 2003) (quoting *Morgan*, 536 U.S. at 117).  Therefore, for her sexual harassment claim to be timely under Title VII, Plaintiff must allege an act contributing to the sexual harassment that occurred between February 24, 2023—300 days before she filed her EEOC charge—and December 21, 2023, the date she filed her charge.  And for her DCHRA sexual harassment claim to be timely, Plaintiff must allege and act contributing to the sexual harassment that occurred between November 14, 2023—a year before Plaintiff filed this lawsuit—November 14, 2024, the date she filed this action.  Here, Plaintiff does not appear to allege any act of sexual harassment that occurred later than 2022.  *See* Am. Compl. ¶ 114 (alleging that she complained to Sergeant Robinson about Officer Campbell's alleged sexual harassment multiple times in 2022).[7] Therefore, her sexual harassment claims are time-barred under both Title VII and the DCHRA.  Moreover, Plaintiff's Title VII sexual harassment claims is entirely unexhausted.  *See* Section I, *supra*.

---

[7]    Plaintiff does not specify when Officer Campbell was transferred to the Second District, which is when Plaintiff alleges that he resumed his prior sexual harassment of her.  *See* Am. Compl. ¶ 108.  Nor does Plaintiff detail any sexual harassment that alleged occurred in 2023, *see id.* ¶ 283; she alleges without elaboration that Campbell and Schefter sexual harassed her "during the statutory period."  *Id.* ¶ 221.

**VIII.** **The Court Should Dismiss Counts V, VI, XII, XIII and XIV of the Amended Complaint as Duplicative.**

Lastly, the Court should dismiss Counts V, VI, XII, XIII, and XIV of the Amended Complaint because they are duplicative of other counts.

Counts V and VI purport to assert claims of "Gender Based Disparate Treatment." But they assert the same claims of sexual harassment contained in Counts I and II. Thus, Counts V and VII should be dismissed as duplicative. Next, Count XII purports to assert a claim of "Sexual Orientation Hostile Work Environment," but Count XI, which asserts harassment based on sexual orientation, encompasses the same claim. Furthermore, Count XII's allegations that Plaintiff was subjected to a retaliatory hostile work environment after she complained about sexual harassment in July 2023 are duplicative of the same allegations asserted in Counts III and IV (and Counts I and II). Therefore, the Court should dismiss Count XII as duplicative.

Counts XIII and XIV are similarly duplicative. These counts purport to assert claims for "Sexual Orientation Retaliatory Hostile Work Environment" and "Sexual Orientation Retaliatory Disparate Treatment." Count XIII is duplicative of Plaintiff's retaliatory hostile work environment claims asserted in Counts III and IV, and Count XIV is duplicative of Plaintiff's retaliation claims asserted in Counts VII and VIII. Thus, Counts XIII and XIV should be dismissed as duplicative.

## CONCLUSION

For these reasons, the Court should grant the District's motion and dismiss the Amended Complaint with prejudice.

Dated: May 9, 2025                    Respectfully submitted,

                                      BRIAN L. SCHWALB
                                      Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Christina Okereke*
CHRISTINA OKEREKE [219272]
Chief, Civil Litigation Division Section II

*/s/ Hailey Guillory*
HAILEY GUILLORY [90022027]
RACHEL B. GALE [90003972]
Assistant Attorneys General
400 6th Street, NW
Washington, D.C. 20001
(202) 442-9794
Hailey.guillory@dc.gov

*Counsel for Defendant District of Columbia*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| TABITHA ALBERTI, |
| *Plaintiff*, |
| v. |
| DISTRICT OF COLUMBIA, |
| *Defendant*. |

Civil Action No. 24-cv-03219-JEB

**ORDER**

Upon consideration of Defendant District of Columbia's Motion to Dismiss the Amended

Complaint, the memorandum of points and authorities in support, any opposition and reply

thereto, and the entire record herein, it is this _____ day of _____ 2025, hereby

**ORDERED** that Defendant's Motion is **GRANTED**; and it is further

**ORDERED** that the Amended Complaint is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

_____
JAMES E. BOASBERG
United States District Judge

CC:    Pamela Keith, Esq.
        *Counsel for Plaintiff*

        Hailey Guillory
        Rachel Gale
        Assistant Attorneys General
        *Counsel for Defendant*