**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TABITHA ALBERTI,         ) | |
|       ) | |
|     *Plaintiff*,     ) | |
|       ) | Case No.:  1:24-CV-03219 (JEB) |
| v.         ) | |
|       ) | JURY TRIAL DEMANDED |
| DISTRICT OF COLUMBIA,   ) | |
|       ) | |
|     *Defendant*.   ) | |
| _____) | |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Tabitha Alberti, by and through the undersigned counsel, hereby submits her opposition to Defendant's Motion to Dismiss.

**INTRODUCTION**

This case concerns the systematic harassment, discrimination, and retaliation endured by Plaintiff Tabitha Alberti—a female, LGBTQ+ police officer at the Metropolitan Police Department (MPD)—over a sustained period of time in which she was denied basic workplace protections, treated with overt hostility by colleagues and supervisors, most of which is still ongoing.

Despite filing repeated internal and external complaints of sexual harassment, discriminatory treatment, and retaliatory conduct, MPD failed to take any meaningful corrective action. Instead, it permitted a culture of misogyny and homophobia to flourish and punished Plaintiff for seeking relief from that hostile environment. As detailed in the Amended Complaint, Plaintiff was denied critical accommodations despite medical documentation, forced to work dangerous solo assignments, subjected to unwarranted counseling and disciplinary letters, and

isolated from necessary safety equipment and peer support. Her male and heterosexual comparators were not treated in this manner.

Plaintiff has alleged with specificity an unbroken chain of discriminatory and retaliatory conduct extending from her initial complaints in 2022 through the present. Defendant's motion to dismiss ignores this pattern and instead seeks to fragment Plaintiff's experience into isolated events in an attempt to argue timeliness or exhaustion failures. That effort is both factually and legally unavailing. Under well-established precedent from the Supreme Court, the D.C. Circuit, and this Court, Plaintiff's hostile work environment and retaliation claims are not only timely but have been fully exhausted through her December 2023 EEOC charge.

At this early stage of the litigation, Plaintiff is only required to plausibly allege facts that give rise to a claim for relief. She has done so in abundance. Defendant's motion must be denied so that Plaintiff may proceed to discovery and obtain the evidence necessary to prove her claims of discrimination, harassment, and retaliation.

## FACTUAL BACKGROUND

Plaintiff Tabitha Alberti is a decorated officer with the Metropolitan Police Department ("MPD") who has served the District of Columbia with distinction since 2006. As an openly LGBTQ+ woman in a male-dominated and often hostile work environment, Plaintiff has faced repeated and escalating discrimination, harassment, and retaliation throughout her nearly two decades of service. Despite her professionalism and dedication, MPD leadership has persistently denied her equal treatment and protection in the workplace.

Plaintiff's difficulties began during her time at the police academy, when she was subjected to sexual harassment by an instructor and retaliated against after reporting the misconduct Am. Comp. ¶¶ *35–38, 47–65.* That early experience set the tone for a sustained pattern of differential

treatment, isolation, and punitive oversight. For example, when working at the Sixth District with fellow Officer Joseph Campbell repeatedly made unwanted sexual advances, harassed Plaintiff, and eventually resorted to using homophobic slurs towards her when his advances were spurned. For years, Plaintiff endured additional harassment—including from Officer Joseph Campbell— and was repeatedly denied support from supervisors when she sought relief. *Id.* ¶¶ 11–15, 70–76, 84.

Between 2022 and 2024, Plaintiff submitted multiple written and verbal requests for accommodations related to a documented medical condition, including reassignment from hazardous solo field work. These requests were routinely denied, even though similarly situated male colleagues received favorable accommodations and safer assignments. *Id.* ¶¶ 88–92, 102– 105, 108–113, 120–125, 132, 150–152.

On December 21, 2023, Plaintiff filed a formal EEOC charge alleging sex-based discrimination, retaliation, and harassment. *Id.* ¶ *126.* That charge was transferred to the U.S. Department of Justice, which issued a Notice of Right to Sue on August 20, 2024. *Id.* ¶ *127.* Plaintiff subsequently filed her original complaint on November 14, 2024. Defendant moved to dismiss the complaint on February 19, 2025. Plaintiff filed her Amended Complaint on April 4, 2025, and Defendant filed its motion to dismiss the amended pleading on May 9, 2025.

In retaliation for filing the EEOC charge and continuing to seek redress, Plaintiff experienced escalating adverse actions. In January 2024, she received a baseless counseling letter, which was followed by formal reprimands in April and May 2024. *Id.* ¶¶ 133, 148, 153–154. She was subjected to surveillance, targeted micromanagement, exclusion from team communications, and public correction in front of peers. *Id.* ¶¶ 134–136, 145–146. MPD leadership—particularly Chief Schefman—ignored or facilitated these actions despite Plaintiff's protected activity and

prior requests for relief. *Id*. ¶¶ 124, 126, 134–135, 150–152.

Throughout this period, Plaintiff was denied critical safety resources such as radios, field partners, and vehicle access, forcing her to work alone in unsafe conditions in violation of MPD policy and medical guidance. *Id*. ¶¶ 120–125, 134–136, 145–146, 150–152, 157). These conditions were not imposed on male or heterosexual colleagues in similar roles. In addition, supervisors made disparaging and gendered remarks that undermined Plaintiff's authority and questioned her fitness for duty due to her sexual identity. *Id*. ¶¶ 59–60, 63, 84, 103, 115–116, 135.

The cumulative effect of this conduct has created a hostile work environment, grounded in both discriminatory animus and retaliation for Plaintiff's protected activities. The allegations in the Amended Complaint describe a continuous and interrelated course of adverse actions that stretch from Plaintiff's initial complaints in 2006 through May 2024. *Id*. ¶ 157, and that fully satisfy the exhaustion and timeliness requirements of Title VII and the DCHRA.

## STANDARD OF REVIEW

### I.     NOTICE PLEADING REQUIREMENTS

The District of Columbia is a notice pleading jurisdiction.  At the motion to dismiss stage, there is no heightened pleading standard. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.". *ICC Evaluation Serv., LLC v. Int'l Ass'n of Plumbing & Mech. Offs., Inc.,* No. CV 16-54 (EGS)(DAR), 2020 WL 1905132, at 11 (D.D.C. Apr. 17, 2020) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  The notice pleading rules are "not meant to impose a great burden on a plaintiff," *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 347 (2005) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513-515 (2002)), and "detailed factual allegations" are not necessary to

withstand a Rule 12(b)(6) motion.  As made clear by the district court in *Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 11-16 (D.D.C. 2008):

> [a] complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 550 (2007), because "simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues," *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)  (internal quotation marks omitted).

*Id.*

All a complainant must do to assert a justiciable claim at this preliminary stage, is to assert that she suffered an adverse action, or was subjected to disparate or discriminatory treatment because of her gender, or other protected category or activity.  This was explained by the court in *Dave v. Lanier*, 606 F. Supp. 2d 45, 48-49 (D.D.C. 2009):

> The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003)  (citing Fed.R.Civ.P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of [her] prima facie case in the complaint, *Swierkiewicz,* 534 U.S. 506, at 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Thus, in a notice pleading jurisdiction such as this one, Plaintiff's burden is to put Defendant on notice of the substance of her claim, and to allege sufficient facts that a result in her favor is plausible.  It does not require Plaintiff to make out an ironclad *prima facie* case, or to prove every element of a claim at the pleadings stage.

## II.    STANDARD OF REVIEW UNDER RULE 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To survive such a motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded factual content allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. While the Court must assume the veracity of factual allegations, it need not accept legal conclusions couched as factual assertions. *Id.*

In determining whether dismissal is appropriate, the Court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); and *see* also Fed. R. Civ. P. 10(c), 12(d). If such materials are appropriately considered, the motion does not convert into one for summary judgment.

Dismissal is only warranted where "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz,* 534 U.S. at 514; and *see* also *Barkley v. U.S. Marshals Serv.*, 766 F.3d 25, 33 (D.C. Cir. 2014) (reversing dismissal where allegations, though sparse, plausibly suggested misconduct).

Finally, the D.C. Circuit recognizes that dismissal under Rule 12(b)(6) is generally disfavored because "complaints need not plead law or match facts to every element of a legal theory." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

## **ARGUMENT**

## I. PLAINTIFF'S TITLE VII AND DCHRA CLAIMS ARE TIMELY AND NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendant incorrectly contends that Plaintiff's Title VII and DCHRA claims are time-barred to the extent they are based on conduct occurring prior to February 24, 2023 (for Title VII) or November 14, 2023 (for DCHRA). This assertion misrepresents both the applicable legal standards and the allegations in Plaintiff's Amended Complaint.

### A. Plaintiff Alleges Multiple Acts of Discrimination and Retaliation Within the Limitations Period

The Amended Complaint alleges discriminatory and retaliatory actions that fall squarely within the statutory limitations periods governing Plaintiff's federal and local claims. Specifically, Counts III and IV (gender discrimination and retaliation under Title VII) and Counts XI and XII (gender discrimination and retaliation under the DCHRA) are supported by events that occurred after February 24, 2023, and thus within both the 300-day federal EEOC filing period and the one-year DCHRA limitations period.

Paragraphs 104–135 of the Amended Complaint describe actionable conduct well within those windows, including:

- The repeated denial of Plaintiff's medically justified hardship transfer. Am. Comp. ¶¶ 108–111, 121–125;

- Preferential treatment of male comparators in assignments and discipline. *Id*. ¶¶ 112–113, 116, 126–128; and

- Retaliatory reprimands, workplace isolation, and disciplinary escalation following protected activity. *Id*. ¶¶ 129–135.

These actions are independently sufficient to sustain Plaintiff's discrimination and retaliation claims under Title VII and the DCHRA.

Defendant argues that portions of the Complaint may involve conduct outside the statutory period, but federal courts have repeatedly held that so long as at least one discriminatory or retaliatory act occurred within the limitations window, dismissal is inappropriate. *See Koch v. White*, 134 F. Supp. 3d 158, 166 (D.D.C. 2015) ("Where at least one act contributing to the hostile work environment occurred within the statutory period, the court may consider the entire scope of the claim."); *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 37 (D.D.C. 2008) (timeliness is satisfied where the complaint alleges any adverse act within the limitations period); *Tattson v. Office of Architect of the Capitol*, 786 F. Supp. 2d 72, 80 (D.D.C. 2011) (permitting earlier acts to be considered when part of a continuing course of retaliation).

**B. The Continuing Violation Doctrine Preserves Earlier Acts as Part of a Hostile Work Environment and Retaliation Scheme.**

In addition to the timely discrete acts, Plaintiff's claims are preserved under the continuing violation doctrine. Defendant cites *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), for the proposition that only acts occurring within the statutory period are actionable. However, *Morgan* expressly held that a hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice," and that as long as one act falls within the statutory period, the court may consider the entire scope of the hostile environment. *Id.* at 117.

Here, Plaintiff's hostile work environment and retaliation claims reflect a persistent pattern of mistreatment dating back to her initial sexual harassment complaint in 2006 at the police academy, continuing through repeated denials of accommodation, assignment to harmful duties, and retaliation for EEO activity. *See* Am. Comp. ¶¶ 35–66, 70–114, 132–157.

This prolonged pattern satisfies the continuing violation standard recognized by the D.C. Circuit. *See Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003) (continuing

violation applies when the workplace is "permeated with discriminatory intimidation, ridicule, and insult"). *See also Edwards v. Murphy-Brown, L.L.C.,* 760 F.Supp.2d 607 (2011) (holding that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible as long as any act contributing to that hostile environment takes place within the statutory time period).

Unlike *Morgan*, where the Court ruled out discrete acts predating the charge period as independently actionable, Plaintiff's Amended Complaint alleges both timely discrete acts and a seamless continuation of hostile and retaliatory conduct.

## C. **Defendant's Attempt to Dismiss Pre-2023 Conduct Ignores Its Role as Evidence of Retaliatory Intent**

Even assuming certain actions could be categorized as discrete and time-barred, those actions remain relevant under established precedent. In *Baird* v*. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011), the D.C. Circuit explained that time-barred events "can be used as background evidence in support of a timely claim."

Here, acts that occurred prior to February 24, 2023—such as the December 2022 refusal to accommodate Plaintiff's medical condition or January 2023 retaliatory scrutiny—directly inform the plausibility and motivation behind the continuing harassment and adverse actions in the following months. These events are not alleged in isolation, but as part of a targeted pattern of reprisal for Plaintiff's protected activity and identity.

Moreover, these facts are relevant to show pretext and retaliatory motive for the adverse actions that clearly fall within the statutory window, such as the denial of transfer and the increased retaliatory scrutiny in Spring and Summer 2023. *See, Koch*, 134 F. Supp. 3d at 166, (stating earlier, time-barred incidents can qualify as part of the same actionable hostile work environment claim

for limitations purposes if they are adequately linked into a coherent hostile work environment claim).

D. **Plaintiff's DCHRA Claims Are Timely Based on Tolling and Continued Harassment**

Defendant concedes that the DCHRA's one-year statute of limitations is tolled while an EEOC charge is pending. *See* Def.'s Mem. Supp. Mot. Dismiss Am. Comp. at 12. *See also*, *Hatter v. WMATA*, 105 F. Supp. 3d 7, 10 (D.D.C. 2015). Plaintiff filed her EEOC charge on December 21, 2023, and this tolls the DCHRA clock as of that date. Because Plaintiff's lawsuit was filed on November 14, 2024, she may assert claims under the DCHRA for conduct occurring within one year prior to the EEOC charge and during the EEOC's pendency. *Hatter*, 105 F. Supp. 3d at 10.

The Amended Complaint clearly alleges retaliatory and discriminatory acts occurring between March and October 2023, which independently support Plaintiff's claims under the DCHRA. *See* Am. Comp. ¶¶ 104–135. Additionally, D.C. courts recognize that the continuing violation doctrine may apply to DCHRA claims where the alleged discrimination is ongoing and sufficiently interrelated. See *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 889–90 (D.C. 2003). Defendant's reliance on *Morgan* and similar cases is misplaced because those decisions involved plaintiffs who failed to allege a sustained pattern of conduct. In contrast, Plaintiff here has pled a consistent and uninterrupted course of retaliatory and discriminatory treatment— including sex-based hostility—spanning many months. These acts are not discrete or isolated but part of a broader unlawful employment practice.

Nor is this a case like *Rattigan v. Holder*, 604 F. Supp. 2d 33 (D.D.C. 2009), where the court concluded that earlier events bore no relation to the later claims. Plaintiff has traced a coherent and escalating retaliatory chain that links earlier misconduct—beginning with her complaints about Officer Campbell and culminating in a series of adverse actions such as the denial

of a hardship transfer in June 2023. In line with this, the District of Columbia concedes that the DCHRA's one-year statute of limitations is tolled while an EEOC charge is pending. *See* Def.'s Mem. Supp. Mot. Dismiss Am. Comp. at 12, *Alberti v. District of Columbia*, No. 1:24-cv-03219 (D.D.C. May 9, 2025) (citing *Hatter*, 105 F. Supp. 3d at 10). Accordingly, Plaintiff may assert DCHRA claims for conduct occurring within one year before her EEOC filing on December 21, 2023, and throughout the administrative pendency of that charge.

## II.    PLAINTIFFS TITLE VII CLAIMS ARE FULLY EXAUSTED

Plaintiff's EEOC charge filed on December 21, 2023, explicitly and adequately describes the same continuing pattern of sex-based discrimination, retaliation, and harassment that forms the basis of the allegations in her Amended Complaint. The allegations are not only "like or reasonably related to" those in the EEOC charge, but in many instances, are specifically detailed in both documents, thereby satisfying Title VII's exhaustion requirement.

### A.    The EEOC Charge Adequately Placed Defendant on Notice of Plaintiff's Claims

Title VII does not require that the EEOC charge preview every precise factual allegation later brought in court. Rather, claims are deemed exhausted if they are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). *See also Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (claims may proceed if they would reasonably have fallen within the scope of the EEOC's investigation).

Here, Plaintiff's EEOC charge included explicit claims of continuing and escalating sex-based discrimination and retaliation related to her prior EEO complaints and ongoing treatment at the agency. This mirrors, and is further elaborated upon in, the Amended Complaint at: ¶¶ 119–126 – documenting retaliatory and discriminatory acts in 2023, including denial of transfers,

unwarranted negative write-ups, and being assigned undesirable shifts or duties; *Id*. ¶¶ 132–136 – describing continued discriminatory denial of opportunities, disparate treatment from male counterparts, and retaliatory behavior by supervisors including Chief Schefman; and *Id*. ¶¶ 153–154 – asserting that Plaintiff continued to experience adverse retaliatory treatment by Schefman into 2024.

These allegations are part of the same series of related events that were disclosed in Plaintiff's EEOC charge and are plainly sufficient under the law to give the employer notice and allow the EEOC to investigate. That is all that is required under the D.C. Circuit's standard. *See Baird*, 662 F.3d at 1251, (charges are sufficient if they describe "the type of discrimination complained of, the alleged harasser, and the dates of the harassment").

## B. <u>Retaliation and Hostile Work Environment Allegations Are Preserved Through the Continuing Violation Doctrine</u>

Defendant's claim that Plaintiff's Title VII allegations involving Schefman in 2024 are "unexhausted" misapplies the law. Retaliation and harassment claims that arise after the filing of an EEOC charge, but are part of a continuing course of related conduct, do not require a separate charge if they are "of like kind to the earlier conduct alleged, reasonably related to it, and within the ambit of an administrative investigation." *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 180 (D.D.C. 2012); and *see also Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).

Plaintiff alleges that her mistreatment continued unabated through 2024, particularly by Schefman, in retaliation for prior protected activity. These allegations are not new or unrelated, but a continuation of the same retaliatory pattern detailed in the EEOC charge and described in the Complaint. *See* Am. Comp. ¶¶ 93–97 – detailing Schefman's involvement in earlier incidents of retaliation in 2022; and *Id.* ¶¶ 153–154 – explaining how his retaliatory conduct resumed in 2024

after Plaintiff returned from protected leave and continued pressing for accommodations and fair treatment.

C. **Pre-2023 Events Support Timely Claims and Do Not Require Separate Exhaustion**

Plaintiff's Amended Complaint references events that predate the EEOC charge, such as her 2022 reassignment and being forced to conduct field visits against medical advice, *Id.* ¶¶ 80–84, 88–92, and her earlier requests for accommodation being denied, *Id.* ¶¶ 70–76. These events are not brought as standalone claims, but as background evidence establishing a hostile work environment and ongoing retaliation.

The D.C. Circuit permits the use of such background allegations to support timely claims. *Alston v. Jackson*, 542 F. Supp. 2d 6, 16 (D.D.C. 2008) (prior acts may be used as "background evidence" for hostile environment and retaliation claims). Likewise, the Supreme Court's decision in *Morgan*, 536 U.S. at 117, explicitly allows the inclusion of pre-charge events in hostile work environment claims if at least one contributing act occurred within the charge period—which, as shown above, is clearly the case.[1]

III. **PLAINTIFF HAS ADEQUATELY PLED TITLE VII AND DCHRA RETALIATION CLAIMS (COUNTS VII, VIII, AND XIV)**

Plaintiff has clearly pled facts sufficient to support her retaliation claims under both Title VII and the DCHRA. The Amended Complaint describes a continuous pattern of materially

---

[1] Defendant's cases are inapposite. Those cases involved plaintiffs who raised completely new types of claims in litigation that had no nexus to the conduct described in the EEOC charge. *See, e.g., Park*, 71 F.3d at 904; *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56 (D.D.C. 2009); *Holmes v. Austin*, No. 23-CV-2415, 2024 WL 4345829 (D.D.C. Sept. 30, 2024). That is not the case here.

Plaintiff has consistently alleged a hostile work environment and pattern of retaliation stretching back to her 2006 complaint at the academy, Am. Compl. ¶¶ 35–38, persisting through 2023, *Id.* ¶¶ 104–126 and into 2024, *Id.* ¶¶ 153–154, all involving similar actors and forms of adverse treatment.

adverse actions taken in close temporal proximity to her protected activity—specifically, her July 2023 EEO complaint—and connects them to a long history of prior protected activity and retaliation. Contrary to Defendant's assertions, Plaintiff's allegations satisfy the legal standard for causation and adverse action and are supported by ample facts set forth in the pleadings.

A.    **The Amended Complaint Establishes Protected Activity and Subsequent Adverse Actions**

To state a claim for retaliation under Title VII and the DCHRA, a plaintiff must allege that (1) she engaged in protected activity; (2) she was subjected to materially adverse actions; and (3) there is a causal connection between the two. *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).

Plaintiff engaged in protected activity on several occasions, including: filing internal discrimination complaints in November 2022, Am. Comp. ¶¶ 94–96; requesting accommodations for her medical condition throughout 2022 and 2023, *Id.* ¶¶ 70–76, 88–91, 102–105; and filing a formal EEO complaint with Internal Affairs in July 2023, *Id.* ¶ 126.

Following the July 2023 EEO complaint, Plaintiff was subjected to a series of materially adverse actions: Denial of a hardship transfer despite documentation of need, *Id.* ¶¶ 119–125, 132; issuance of reprimands and counseling letters beginning in January 2024 and continuing through the spring, *Id.* ¶¶ 133, 148, 153–154; escalating scrutiny and micromanagement by supervisors, *Id.* ¶¶ 134–136, 145–146; refusal to support her work-related medical accommodations, resulting in unsafe field assignments, *Id.,* ¶¶ 120–124, 131, 150–152; and damage to her professional reputation and morale, as she was targeted for public correction and excluded from support resources *Id.* ¶¶ 135–136, 145–146.

These adverse actions, particularly in light of their frequency, severity, and close connection to Plaintiff's protected activity, meet the standard articulated in *Burlington Northern*

*& Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), which defines a materially adverse action as one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

### B.  Causation Is Sufficiently Alleged Through Both Temporal Proximity and Pattern-Based Retaliation

Defendant argues that Plaintiff's retaliation claim fails because the gap between her July 2023 EEO complaint and later adverse actions is too long. Def. Br. at 15-16. But courts in this District have repeatedly held that causation may still be inferred where protected activity is followed by a pattern of ongoing retaliatory conduct, even after a delay.

Here, Plaintiff alleges denials of accommodation in August 2023 shortly after her EEO complaint, followed by a baseless reprimand in January 2024, escalating to additional disciplinary letters and adverse working conditions through May 2024. Am. Comp. ¶¶ 132-133, 148, 153-154, 157. This sequence supports a plausible inference of retaliation under a pattern theory.

*See Burton v. District of Columbia*, 153 F. Supp. 3d 13, 24–26 (D.D.C. 2015) (denying summary judgment on retaliation where adverse performance reviews and disciplinary actions occurred over several months after protected complaint, rejecting that "temporal gap" was dispositive, and finding a "pattern of antagonism" supported inference of causation);*Witcher v. WMATA*, 263 F. Supp. 3d 74, 82–83 (D.D.C. 2017) (finding retaliation claim survived pleading stage where plaintiff alleged a series of service restrictions and unfavorable assignments that began after internal complaint, distinguishing between discrete acts and a continuing campaign);and *Alston*, 561 F. Supp. 2d at 37–38, (holding complaint properly pled retaliation where initial adverse action occurred within limitations period and was followed by additional

discipline and exclusion from work-related opportunities, allowing inference that those later events were connected to the protected activity).

Additionally, Plaintiff alleges that the very individuals responsible for these retaliatory actions were aware of her protected activity, including the filing of her EEO complaints and accommodation requests. Am Compl. ¶¶ 126, 134, 151–152. Their continued oversight and involvement in adverse actions further supports the inference of retaliation.

### C.  The Disciplinary Actions and Working Conditions Were Materially Adverse

Defendant attempts to minimize the significance of Plaintiff's reprimands and disciplinary letters, claiming they are not actionable. Def. Br. at 17-18. But the D.C. Circuit has held that such actions may constitute materially adverse conduct if, like here, they are part of a retaliatory campaign or lead to concrete negative consequences. *See Mogenhan*, 630 F. Supp. 2d at 75 (holding that counseling memoranda and reprimands may be actionable where they are part of a "pattern of antagonism" and carry the potential to chill future protected activity or influence employment decisions, including promotions or assignments—similar to Plaintiff Alberti's allegations that she received unwarranted disciplinary actions beginning in January 2024, which escalated through April and May 2024, and negatively affected her workplace conditions and advancement opportunities, Am. Comp. ¶¶ 133, 148, 153–154;and *Ortiz-Diaz v. U.S. Dep't of Hous. & Urban Dev.*, 867 F.3d 70, 74–75 (D.C. Cir. 2017) (reversing dismissal where lateral transfer denials were found to be materially adverse under Title VII because they affected the employee's professional development and future prospects—analogous to Alberti's allegations that she was repeatedly denied hardship transfers and reassigned to hazardous solo duty after requesting accommodations and filing complaints, Am. Comp. ¶¶ 120–132.

Here, the retaliatory actions included: Unwarranted written reprimands that were included in Plaintiff's personnel file, Am. Comp.  ¶¶ 133, 148; targeted surveillance and public chastisement, *Id.* ¶¶ 134–136, 145–146; denying assistance and accommodations, which forced Plaintiff to perform hazardous tasks alone, *Id.* ¶¶ 120, 124–125, 131, 150–152; and stripping Plaintiff of support and isolating her from peers, *Id.* ¶¶ 135–136.

These consequences directly affected Plaintiff's workplace safety, reputation, and ability to perform her duties. Even absent demotion or termination, the cumulative impact of these actions easily meets the "materially adverse" standard. *See Baloch*, 550 F.3d at 1199 (reprimands can be adverse where they affect position or career trajectory); and *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) (a reasonable employee might be dissuaded from engaging in protected activity by repeated disciplinary scrutiny).

## IV. PLAINTIFF ALLEGES THAT SHE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT THAT BEGAN WHEN SHE REPORTED SEXUAL HARASSMENT THAT TOOK PLACE WHILE SHE WAS AT THE POLICE ACADEMY

### A.  <u>Plaintiff Alleges a Longstanding Hostile Work Environment</u>

Defendant's first argument is that the Court should dismiss claims related to discrete acts that took place prior to February 23, 2023, which is the statutory period related to Plaintiff's EEOC charge filed in December of 2023.  This argument is a red herring.  Plaintiff does not have any claims in the Complaint seeking redress for discrete acts that took place prior to February 23, 2023. A plaintiff can support a claim for both disparate treatment and retaliation by alleging that she was subjected to a hostile work environment due to the harasser's behavior itself, as well as for retaliation for having opposed or reported sexual harassment:

> The Court notes that "[i]n this circuit, a hostile work environment can amount to retaliation under Title VII." *Hussain v. Nicholson,* 435 F.3d 359, 366 (D.C.

> Cir. 2006); and *see also Bergbauer v. Mabus, 810 F. Supp. 2d 251, 256* (D.D.C. 2011) ("Alongside a hostile work environment claim based upon sexual harassment, the D.C. Circuit also recognizes a 'retaliation' variant actionable under Title VII.").

*Hoskins v. Howard Univ.*, 839 F. Supp. 2d 268, 280, n.6 (D.D.C. 2012).

Plaintiff alleges that she has been the victim of an ongoing hostile work environment that began in October of 2006, and is ongoing. The Complaint clearly connects the dots between her first complaint of sexual harassment, and the ongoing retaliatory hostile work environment she is enduring as a result of being labeled a complainer and "problem child." *See* Am. Comp. ¶¶ 47-65. Plaintiff's complaint identifies specific acts of extreme humiliation, and alleges that such acts were sufficiently frequent to create an intolerable workplace. *Id.*

The Complaint goes on to explain how the harassment and retaliation Plaintiff endured at the Academy followed her into her work assignments, and colored the way she was treated by her colleagues and superiors. *See* Am. Comp. ¶¶ 70-74. Instead of being permitted to simply do her job, Plaintiff was subjected to yet more sexual harassment from another officer, Joseph Campbell ("Officer Campbell"). *Id.* ¶¶ 76. Furthermore, Plaintiff's Complaint alleges that the reason Officer Campbell felt he was free to sexually harass Plaintiff is because nothing was done about her previous claims of harassment. *Id.* ¶¶ 11-15. Plaintiff alleges that MPD has a culture of tolerating denigrating, harassing and sexualized comments towards female officers, and moreover, has a very strong culture of suppressing the reporting of such behavior by systematically retaliating against those who do complain. *Id.* ¶¶ 15-28. In short, Defendant is flatly wrong in asserting that any part of Plaintiff's Amended Complaint alleges claims that are untimely, because all of the acts described form an ongoing transgression that is actionable under the law.

B. **Acts That Took Place Outside the Statutory Period are Relevant to, and Part and Parcel of, a Hostile Work Environment**

To state a hostile work environment claim under Title VII or the DCHRA, a plaintiff must allege unwelcome harassment based on a protected characteristic that is sufficiently severe or pervasive to alter the conditions of employment. *See Steele v. Schafer*, 535 F.3d 689, 694–95 (D.C. Cir. 2008); *Pennsylvania State Police v. Suders*, 542 U.S. 129, 133 (2004). Courts assess the "totality of the circumstances," including the frequency, severity, and impact of the conduct. *See Baloch*, 550 F.3d at 1201; *Franks v. Edison Elec. Inst.*, No. 20-cv-3393 (APM), 2022 WL 971157, at *2 (D.D.C. Mar. 31, 2022).

Importantly, hostile work environment claims may encompass acts occurring outside the statutory filing period so long as they are "part of the same actionable hostile work environment." *Morgan*, 536 U.S. at 117; *Allen v. Yellen*, No. 18-cv-1214 (RC), 2023 WL 3933723, at *29 (D.D.C. June 9, 2023). In *Allen*, the court reaffirmed that "adequately linked" acts—such as those involving similar conduct, frequency, or perpetrators—may collectively support a "coherent hostile environment claim," even if individual events would not be actionable standing alone.

Defendant incorrectly asserts that Plaintiff's claims are untimely or rest solely on discrete adverse acts. But the law is clear: discrete actions like reprimands or denial of resources can be considered as part of a broader hostile work environment, even if not independently actionable. *See Higgs v. Cava Grp., Inc.*, 239 F. Supp. 3d 257, 261 (D.D.C. 2017) (acts not justiciable as discrete claims may still support a hostile work environment); *Brooks v. Grundmann*, 748 F.3d 1273, 1278 (D.C. Cir. 2014) (same).

Moreover, hostile work environment claims may support or arise from retaliation, not just discrimination. *See Chan Chan v. Children's Nat'l Med. Ctr.*, No. 18-cv-2101, 2019 WL 4471789, at *8 (D.D.C. Sept. 18, 2019) ("A hostile work environment can constitute a materially adverse

action for retaliation claims"); *Harrison v. Office of the Architect of the Capitol*, 985 F. Supp. 2d 13, 21 (D.D.C. 2013).

Courts have consistently sustained claims involving patterns of harassment over time, even where the conduct was not continuous or especially severe in isolation. In *Kriesch v. Johanns*, 468 F. Supp. 2d 183 (D.D.C. 2007), the plaintiff described a course of bullying and management inaction over multiple years. The court held that even "relatively few incidents" of intimidation were sufficient to support a hostile work environment claim where the conduct was recurring and left unaddressed by supervisors. *Id.* at 192–93.

Similarly, in *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005), the court held that a hostile work environment claim was viable where the plaintiff alleged hostile conduct over a multi-year span, including exclusion, monitoring, and disparagement—all connected to protected activity. In *Baloch v. Norton*, 517 F. Supp. 2d 345, 362 (D.D.C. 2007), the court explained that "sporadic incidents of harassment" may rise to the level of a hostile work environment when viewed cumulatively and in context with retaliatory animus.

Plaintiff's allegations in this case—encompassing supervisor-enabled hostility, surveillance, disciplinary letters, and repeated safety deprivations across 2023–2024—fit squarely within the reasoning of *Kriesch*, *Nurriddin*, and *Baloch*. The fact that some incidents fall outside the statutory window does not bar their consideration as part of an ongoing hostile work environment.

## V.    PLAINTIFF HAS PLAUSIBLY ALLEGED GENDER AND SEXUAL ORIENTATION DISCRIMINATION UNDER TITLE VII AND THE DCHRA (COUNTS V, VI, AND XI).

Defendant's argument that Plaintiff's claims under Title VII and the DCHRA fail for lack of adverse action or causal nexus misrepresents the allegations set forth in the Amended

Complaint. Contrary to the District's assertions, Plaintiff alleges multiple adverse actions—including denial of accommodation, disparate discipline, assignment to dangerous solo duties, and denial of support—that affected the terms and conditions of her employment and were plausibly based on her gender and sexual orientation. These allegations, when taken as true, state a claim for disparate treatment discrimination under both statutes.

## Legal Standard

To survive a motion to dismiss a Title VII or DCHRA disparate treatment claim, a plaintiff need only plausibly allege that:

1.    She is a member of a protected class;

2.    She suffered an adverse employment action; and

3.    The action occurred under circumstances giving rise to an inference of discrimination.

*Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 84 (D.D.C. 2019); *Little v. D.C. Water & Sewer Auth.*, 91 A.3d 1020, 1027 (D.C. 2014). As clarified by the Supreme Court in *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024), an adverse employment action includes any action that causes "some harm" with respect to a "term or condition of employment." No showing of significant financial injury is required at the pleading stage.

### A.  Plaintiff Alleges Discrete Adverse Actions Motivated by Gender and Sexual Orientation

The Amended Complaint details numerous adverse actions that altered the conditions of Plaintiff's employment and were accompanied by unequal treatment when compared to similarly situated male and/or heterosexual colleagues:

1.    Assignment to Solo Field Duties Despite Medical Need and Unsafe Conditions: Plaintiff was routinely required to work alone in dangerous field conditions, despite

medical documentation supporting her need for a hardship transfer Am. Comp. ¶¶ 70–76, 120–125, 131, 150–152. Male colleagues in comparable roles received safer or supported assignments. *Id*. ¶¶ 108–109, 112–113, 124.

2.     Disproportionate and Targeted Discipline: Plaintiff was issued counseling letters and reprimands in January, April, and May 2024. *See* Am. Comp. ¶¶ 133, 148, 153–154 for alleged minor infractions. These were not imposed on male or heterosexual coworkers who engaged in similar or more severe conduct. *Id*. ¶¶ 84, 109, 112–113, 117. Courts in this District have repeatedly held that such actions may constitute adverse employment actions under Title VII and the DCHRA where they carry consequences for job security, promotion, or working conditions. *See Mogenhan*, 630 F. Supp. 2d at 75 (denying motion to dismiss where counseling memoranda and reprimands issued after protected activity supported a retaliation claim); *Tutt v. District of Columbia*, 251 F. Supp. 3d 78, 83–84 (D.D.C. 2017) (finding that "counseling memoranda and letters of reprimand may be materially adverse" where they "could affect future employment opportunities"); *Ortiz-Diaz,* 867 F.3d at 74 (reaffirming that even actions short of termination—such as formal reprimands—can be adverse under Title VII if they might deter protected activity or negatively impact employment conditions).

3.     Exclusion from Work Resources and Support: Plaintiff was denied access to radios, field partners, and backup assistance that were regularly afforded to other officers. Am. Comp. ¶¶ 123–124, 134–136. These denials jeopardized her safety and professional performance and were carried out by supervisors aware of her gender and LGBTQ+ identity. *Id.* ¶¶ 116, 134–135.

4.      Hostile Conduct and Comments Based on Gender and Sexual Orientation: Plaintiff was subjected to derogatory remarks and stereotyping related to her gender and sexual orientation. *Id.* ¶¶ 59–60, 66, 84, 90, 103, 115–116. Supervisors and colleagues openly questioned her capabilities and commitment based on her sexual orientation and non-traditional gender presentation. *Id.* ¶¶ 63, 84, 115–116.

These allegations are not general complaints about workplace culture; they describe a pattern of employment decisions that materially affected Plaintiff's working conditions and were differentially applied based on her membership in protected classes. This constitutes adverse action under *Muldrow* and supports the inference of discrimination under *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).

## B.  **The Inference of Discrimination Is Supported by Comparator Evidence and Supervisor Conduct**

The Amended Complaint further strengthens the inference of discrimination by alleging that similarly situated male and heterosexual coworkers were not subjected to the same level of scrutiny, discipline, or danger. Am. Comp. ¶¶ 84, 109, 112–113, 117, 124–125. These comparators were treated more favorably despite engaging in similar or more serious conduct or having less need for accommodation or support.

Moreover, Plaintiff alleges that the individuals who made these discriminatory decisions were aware of her gender and sexual orientation and had demonstrated hostility or bias toward her on that basis. *Id.* ¶¶ 59–60, 66, 84, 103, 116, 135. This supports a reasonable inference of discriminatory intent. *See George*, 407 F.3d at 412 (inference of discrimination supported by discriminatory remarks and comparative evidence).

## C.  **Plaintiff's Claims Are Not Solely "Hostile Work Environment" Allegations**

Defendant incorrectly characterizes the entirety of Counts V, VI, and XI as hostile work environment claims. While Plaintiff also asserts hostile work environment under separate counts, Counts V, VI, and XI specifically plead disparate treatment based on gender and sexual orientation, and those claims are supported by the adverse actions listed above. *See* Am. Comp. ¶¶ 219–224 (Count V), ¶¶ 225–230 (Count VI), and ¶¶ 278–285 (Count XI). Each count references not only harassment but also differential treatment in assignments, disciplinary decisions, denial of transfer and accommodation, and workplace support—all of which are recognized as adverse actions under *Muldrow*.

## VI.    PLAINTIFF'S DCWPA CLAIMS ARE ADEQUATELY SUPPORTED

Defendant attempts to dismiss Plaintiff's DCWPA claims is unfounded. Plaintiff has sufficiently pled that she made protected disclosures regarding unlawful conduct and violations of public safety to her supervisors and was thereafter subjected to a series of adverse employment actions. The Amended Complaint details the timing, content, and consequences of these disclosures with sufficient specificity to satisfy the standards articulated in *Freeman v. District of Columbia*, 60 A.3d 1131 (D.C. 2012) and its progeny.

### A. <u>Legal Standard</u>

To state a claim under the DCWPA, a plaintiff must allege:

1.    A protected disclosure of a violation of law, gross mismanagement, or a danger to public health or safety;

2.    A prohibited personnel action taken by a supervisor; and

3.    That the protected disclosure was a contributing factor to the personnel action.

*See Johnson v. District of Columbia*, No. 20-cv-2944 (RC), 2024 WL 1345090, at 11–12 (D.D.C. 2024); *see* also *Freeman*, 60 A.3d at 1140–41; D.C. Code § 1–615.53.

Protected disclosures may include internal complaints, formal EEO complaints, or oral reports to supervisors, so long as they concern wrongdoing or danger to public safety. *See Freeman*, 60 A.3d at 1141–42; *Wilburn v. District of Columbia*, 957 A.2d 921, 925 (D.C. 2008).

### B.  <u>Plaintiff Made Protected Disclosures to Supervisors</u>

The Amended Complaint contains specific allegations showing that Plaintiff made protected disclosures regarding retaliation, workplace safety, and mismanagement to her supervisors and Internal Affairs:

In July 2023, Plaintiff filed a formal EEO complaint with Internal Affairs reporting ongoing retaliation, unsafe working conditions, and unequal treatment on the basis of gender, sexual orientation, and disability. Am. Comp. ¶¶ 126–127.

Prior to that, in late 2022 and throughout 2023, she submitted multiple written and verbal disclosures requesting accommodations for a documented medical condition, reporting that field assignments without support endangered her safety and violated internal policy. *Id*. ¶¶ 70–76, 88–92, 102–105, 120–125.

She further raised concerns regarding disparate discipline, policy violations, and denial of equipment and partner support in communications with Chief Schefman and other command-level supervisors. *Id*. ¶¶ 124–126, 131–132, 134–135.

These reports constituted protected disclosures because they implicated violations of internal policy, unlawful discrimination, and public safety concerns in the form of unsupported solo field assignments—all within the scope of D.C. Code § 1-615.52(a)(6).

### C.  <u>Plaintiff Was Subjected to Prohibited Personnel Actions by Supervisors</u>

The Amended Complaint alleges multiple retaliatory actions taken by Plaintiff's supervisors after she engaged in protected activity, including: denial of her hardship transfer

request despite medical justification. Am. Comp. ¶¶ 120–125, 132; issuance of a counseling letter in January 2024, followed by formal reprimands in April and May 2024. *Id.* ¶¶ 133, 148, 153–154; assignment to unsafe solo fieldwork after reporting retaliation and requesting support. *Id.* ¶¶ 124–125, 131, 150–152; and exclusion from field radios, vehicles, and access to partner officers, severely impeding her ability to perform her duties safely and effectively. *Id*. ¶¶ 134–136, 145–146.

These personnel actions materially altered Plaintiff's employment conditions and were carried out by individuals in supervisory roles, including Chief Schefman and command staff. Such actions qualify as "prohibited personnel actions" under D.C. Code § 1-615.53(a) and *McCall v. D.C. Housing Authority*, 126 A.3d 701, 705 (D.C. 2015).

### D. Causation is Supported by Specific Facts and Temporal Proximity

Plaintiff plausibly alleges that her protected disclosures were a contributing factor in the retaliatory actions taken against her. Under the D.C. Whistleblower Protection Act, this standard imposes a low threshold at the motion to dismiss stage. A plaintiff need only allege that the protected activity played any role in the employer's decision to take adverse action—it need not be the sole or primary reason. *See Freeman v. D.C. Dep't of Empl. Servs.*, 60 A.3d 1131, 1142 (D.C. 2013) ("[A] plaintiff may establish causation through circumstantial evidence that protected activity was a contributing factor in the challenged action."); *Wilburn*, 957 A.2d at 925 (characterizing the contributing factor test as a "low threshold" that is met if the protected activity had "any influence" on the retaliatory decision).

Courts in this jurisdiction have consistently recognized that temporal proximity, when combined with a pattern of escalating retaliatory acts, and supervisor knowledge of the protected activity, may satisfy the contributing factor test at the pleading stage. *See Mogenhan*, 630 F. Supp.

at 75 (denying motion to dismiss where counseling memos, increased scrutiny, and reprimands issued after EEO activity plausibly suggested retaliatory motive); *Burton*, 153 F. Supp. 3d at 26 (recognizing that a pattern of antagonism over time—particularly where carried out by individuals aware of the protected activity—can support an inference of causation even where the initial disclosure and later retaliation are months apart).

Here, Plaintiff alleges that after making protected disclosures to Internal Affairs in July 2023, she was promptly denied a hardship transfer and subjected to increasingly hostile working conditions. Am. Comp. ¶¶ 126–132. In January 2024, she received a counseling letter and became the target of surveillance and disciplinary measures, despite no decline in performance. *Id.* ¶¶ 133–135. That pattern escalated into formal reprimands and punitive solo assignments through April and May 2024. *Id.* ¶¶ 148, 153–154, 157. These retaliatory actions were carried out by supervisors, including Chief Schefman—who were aware of Plaintiff's protected disclosures and in a position to exact reprisal. *Id.* ¶¶ 126, 134–135.

This timeline supports causation under *Freeman*, 60 A.3d at 1142, which reaffirmed that temporal proximity, supervisory awareness, and cumulative adverse treatment may satisfy the causal connection required by the DCWPA. *Id*. Plaintiff's allegations, taken as true, easily meet the contributing factor standard.

**E.  Supervisory Retaliation is Well-Pled**

Defendant wrongly asserts that Plaintiff has not tied retaliatory actions to supervisors. The Amended Complaint explicitly names decision-makers and authority figures responsible for adverse actions:

Chief Schefman is identified as having denied accommodations and initiated disciplinary action Am. Comp. ¶¶ 124, 133, 148. Other command-level supervisors were aware of Plaintiff's

disclosures and participated in adverse actions or permitted them to occur (alleging that "commanders, including Chief Schefman, were aware of Plaintiff's prior protected disclosures and nonetheless issued adverse disciplinary actions," and that "other Assistant Chiefs and supervisors either took part in or permitted the retaliatory actions to continue unchecked," *Id.* ¶¶ 126, 134–135, 150–152).

This satisfies D.C. Code § 1-615.53(a), which requires the retaliatory conduct to be taken by a "supervisor," not a co-worker. Even where peers may have participated in a hostile environment, Plaintiff alleges that supervisors facilitated, ratified, or ignored the conduct.

### F. **Plaintiff's Claims Are Timely**

Finally, Plaintiff's DCWPA claims are timely. The Complaint alleges multiple retaliatory actions by supervisors that occurred between July 2023 and May 2024—well within the DCWPA's one-year statute of limitations for claims filed on November 14, 2024. Am. Comp. ¶¶ 126–157. Background facts outside that window provide context but are not asserted as standalone claims.

## VII. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS BASED ON GENDER AND SEXUAL ORIENTATION ARE TIMELY AND FULLY EXHAUSTED (COUNTS I, II, XI, AND XII)

Plaintiff's Amended Complaint carefully delineates distinct factual scenarios and legal theories addressing discrimination, retaliation, and harassment. Each claim uniquely details discriminatory and retaliatory acts, meriting individual and separate consideration under Title VII, DCHRA, and DCWPA.

### A. **Governing Legal Framework: *Morgan* and Continuing Violation Doctrine**

The U.S. Supreme Court in *Morgan*, 536 U.S. at 117, made clear that: "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." This principle

is equally applicable under the DCHRA. *Lively*, 830 A.2d at 890. A hostile work environment is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 117.

## B. <u>Specific Harassment Alleged Within the Statutory Period</u>

Defendant incorrectly claims that all relevant conduct predates the limitations window. Plaintiff identifies numerous acts that occurred after February 24, 2023 (Title VII window) and November 14, 2023 (DCHRA window), including: Persistent retaliation and surveillance by supervisors starting in July 2023 following Plaintiff's protected activity, Am. Comp. ¶¶ 126–132 (alleging that "[i]n July 2023, Plaintiff's supervisors—including Chief Schefman and other command staff—began retaliating against her by issuing memoranda criticizing her performance," and that "[o]ver the following months, Plaintiff was subjected to heightened surveillance, repeated write-ups, and investigatory interviews by Deputy Chief Taylor and other high-ranking officials"); counseling letter in January 2024 issued by Chief Schefman after Plaintiff raised protected disclosures, *Id.* ¶ 133; discriminatory write-ups in April and May 2024, including one alleging "improper uniform" which Plaintiff was instructed not to wear, *Id.* ¶¶ 148, 153–154; continued denial of radio access, partner support, and safe field duty through at least May 30, 2024, despite documented medical needs and policy violations, *Id.* ¶¶ 134–136, 145–146, 150–152, 157; and exclusion from team communications, humiliation in front of peers, and obstruction from work-related duties, *Id.* ¶¶ 135, 145, 150–151.

These actions occurred during the statutory period and contributed to an ongoing hostile work environment. Under *Morgan*, this brings the entire course of conduct—dating back to 2022 and even earlier—within the court's purview for liability analysis.

## C. <u>Hostility Based on Gender and Sexual Orientation Is Explicitly Alleged</u>

The Amended Complaint connects this ongoing mistreatment to Plaintiff's gender and LGBTQ+ identity: Supervisors and coworkers made disparaging and stereotyped remarks about Plaintiff's identity. Am. Comp. ¶¶ 59–60, 63, 84, 90, 103, 115–116; plaintiff was denied equipment, safety backup, and assistance offered to male or heterosexual colleagues, *Id.* ¶¶ 124–125, 134–136; supervisors singled her out for public correction, prevented her from attending training, and unfairly scrutinized her appearance and assignments, *Id.* ¶¶ 133–135, 145–146, 150–151; male comparators were treated favorably in discipline, support, and assignments, *Id.* ¶¶ 84, 108–109, 112–113, 117, 124.

These facts, taken together, establish an environment "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (holding that a hostile work environment is actionable under Title VII when the workplace is objectively and subjectively abusive, even if the plaintiff does not suffer tangible psychological injury). The D.C. Circuit has repeatedly held that such environments are actionable. *George*, 407 F.3d at 416 (reversing grant of summary judgment where supervisor yelled at plaintiff, treated her differently from White coworkers, and made hostile remarks); *Broderick v. Donaldson*, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (reversing dismissal of hostile work environment claim based on allegations that plaintiff was marginalized, stripped of duties, and targeted after reporting discrimination). *See* Am. Comp. ¶¶ 86–93, 126–132, 150–153 (alleging that after Plaintiff reported discrimination and harassment, she was ostracized by coworkers, subjected to repeated surveillance, denied accommodations, and issued unwarranted disciplinary actions in a pattern of escalating hostility by supervisory staff)

### D.  Title VII Claims Were Properly Exhausted

Plaintiff filed an EEOC charge on December 21, 2023, outlining her experiences of ongoing harassment, retaliation, and differential treatment. Am. Comp. ¶ 126. This charge sufficiently put the agency on notice of the claims now raised in the Amended Complaint, including those related to gender and sexual orientation.

As the D.C. Circuit held in *Park,* 71 F.3d at 907, a Title VII complaint may "encompass any discrimination like or reasonably related to the allegations of the charge". Here, Plaintiff's EEOC charge detailed the discriminatory and retaliatory conduct she faced from colleagues and supervisors. Therefore, she has fully exhausted her Title VII hostile work environment claims.

### E. **DCHRA Claims Are Timely**

DCHRA claims must be brought within one year of the discriminatory act, per D.C. Code § 2–1403.16(a). Plaintiff filed her federal complaint on November 14, 2024, and includes conduct through May 30, 2024 Am. Comp. ¶ 157. This includes: retaliatory discipline and false allegations *Id*. ¶¶ 148, 153–154; exclusion from communications and denial of equipment or backup *Id*. ¶¶ 134–136, 145–146; and isolation and field assignments violating her medical needs *Id*. ¶¶ 120–125, 131, 150–152. The entirety of this conduct occurred within the DCHRA's one-year limitations period.

## VIII. COUNTS V, VI, XII, XIII, AND XIV ARE NOT DUPLICATIVE AND REFLECT LEGALLY DISTINCT CLAIMS BASED ON SEPARATE THEORIES AND PROTECTED CHARACTERISTICS

Defendant's contention that Counts V, VI, XII, XIII, and XIV are "duplicative" misconstrues the legal distinctions between disparate treatment, hostile work environment, and retaliation under Title VII and the DCHRA, and ignores the specific factual and statutory bases pled in the Amended Complaint. The Federal Rules permit the assertion of alternative and

overlapping legal theories, and dismissal on duplicity alone is improper where each count alleges a distinct legal violation, as is the case here.

**A. Legal Standard – "Duplicative" Claims Must Be Truly Redundant in Both Legal Theory and Factual Basis**

To warrant dismissal for duplicity, a claim must be wholly redundant in both legal theory and factual foundation. *See Bracey v. Luray*, 2020 WL 6940380, at 3 (E.D. Va. Nov. 24, 2020) (claims are not duplicative merely because they arise from the same nucleus of facts); *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 332 F. Supp. 3d 96, 113 (D.D.C. 2018) (courts may permit overlapping theories unless one count is legally subsumed by another).

Here, each of the challenged counts asserts a unique claim based on a distinct legal theory or protected category under Title VII and/or the DCHRA.

**B. Counts V and VI (Gender-Based Disparate Treatment) Are Not Duplicative of Counts I and II (Gender-Based Hostile Work Environment)**

Counts I and II allege a hostile work environment under Title VII and the DCHRA based on repeated, pervasive harassment rooted in Plaintiff's gender identity, including being denied backup, excluded from communication and support, and publicly corrected and isolated over a sustained period. Am. Comp. ¶¶ 58–64, 84–90, 115–117, 124–126, 133–136, 145–146, 150–157.

In contrast, Counts V and VI allege disparate treatment, i.e., that Plaintiff was treated less favorably than male comparators in concrete terms of employment—including field assignments, access to safety resources, disciplinary measures, and denial of accommodations—because of her gender. *Id*. ¶¶ 84, 90, 102–105, 112–113, 120–125, 132–133, 148, 153.

These theories are distinct. Hostile work environment focuses on the overall atmosphere and severity of harassment, while disparate treatment targets specific adverse employment actions

resulting from discriminatory intent. *See Figueroa* v. *Pompeo*, 923 F.3d 1078, 1086 (D.C. Cir. 2019).

**C.**  **Count XII (Sexual Orientation Hostile Work Environment) Is Distinct from Count XI (Sexual Orientation Discrimination)**

Count XI alleges disparate treatment based on sexual orientation, including denial of safety resources and unequal discipline. Am. Comp. ¶¶ 109, 112–113, 124–125, 131, 134–135.

Count XII alleges a hostile work environment based on Plaintiff's sexual orientation, including persistent isolation, homophobic conduct and remarks, and denial of equipment and partner support that created a pervasive, degrading work atmosphere. *Id.* ¶¶ 59–60, 63, 84, 103, 115–116, 123–124, 134–136, 145–146.

This mirrors the distinction between disparate treatment and hostile work environment under gender claims. The D.C. Circuit recognizes both as valid, separately cognizable claims. *Broderick*, 437 F.3d at 1231–33; and *Baloch*, 550 F.3d at 1200.

Moreover, Plaintiff specifically alleges that the sexual orientation-based hostile environment escalated following her July 2023 EEO complaint. Am. Comp. ¶ 126—a temporal and retaliatory dimension not raised in Count XI. Accordingly, Count XII is also distinguishable on factual grounds.

**D.**  **Counts XIII and XIV (Sexual Orientation Retaliation – Hostile Work Environment and Disparate Treatment) Are Not Duplicative of Counts III, IV, VII, or VIII**

Counts XIII and XIV are brought under the DCHRA and address retaliation based specifically on Plaintiff's sexual orientation, alleging that after reporting harassment and unequal treatment based on that identity, she was denied field support, subjected to unwarranted write-ups, and targeted by command staff. Am. Comp. ¶¶ 124–126, 132–133, 134–135, 145–146, 148, 153–157.

In contrast, Counts III and IV (Title VII) and VII and VIII (DCHRA) allege retaliation based on Plaintiff's gender and EEO activity, including her formal 2023 complaint about gender-based mistreatment. *Id*. ¶¶ 126–127, 132–133, 148.

The factual basis, protected characteristic, and legal source of these claims differ. Under *Howard R.L. Cook & Tommy Shaw Found. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013), a plaintiff may raise multiple retaliation claims based on different statutes or protected traits if they arise from different motives or facts—as they do here.

### E. Pleading in the Alternative Is Proper Under Rule 8 and Not Duplicative

Federal Rule of Civil Procedure 8(d)(2) expressly permits alternative and even inconsistent claims to be pled in the same complaint. *See* Fed. R. Civ. P. 8(d)(2); and *Doe v. Howard Univ.*, 2022 WL 4593056, at *4 (D.D.C. Sept. 30, 2022) ("Claims that overlap in facts but differ in legal theory are not impermissibly duplicative.").

Plaintiff is entitled to pursue all viable legal theories arising from the same series of events. The Court should allow discovery to determine whether the discriminatory and retaliatory conduct was motivated by gender, sexual orientation, or both, and whether the environment and specific acts meet the relevant legal thresholds. Dismissal at this stage would be premature.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. The Amended Complaint pleads detailed and plausible claims of discrimination, retaliation, hostile work environment, and related statutory violations under Title VII, the DCHRA, and the DCWPA. Plaintiff has met the applicable pleading standards under Rule 8 and Rule 12(b)(6), and all claims are timely and properly exhausted. To the extent there is any ambiguity regarding the legal sufficiency or factual specificity of any claim, such matters are more

appropriately resolved through discovery, not at the motion to dismiss stage. Accordingly,

Defendant's motion should be denied.


Respectfully submitted,

**/s/ Raymond K. Gordineer**
Raymond K. Gordineer
Scott M. Lempert
Pamela M. Keith
Center For Employment Justice, LLC
650 Massachusetts Ave. NW
Suite 600
818-800-0292
raygordineer@centerforemploymentjustice.com
scottlempert@centerforemploymentjustice.com
pamkeith@centerforemploymentjustice.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

This certifies that a true and correct copy of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss was sent by electronic filing on this 13th day of June 2025 to:

Christina Okereke
Rachel Gale
Hailey Guillory
OFFICE OF THE ATTORNEY GENERAL
400 6th St. NW
Washington, DC 20001
Rachel.gale@dc.gov
(202) 735-7458
*Counsel for Defendant*

**/s/ Raymond K. Gordineer**
Raymond K. Gordineer, Esq.